ROBIN F. WYNNE, Associate Justice
Rodolfo Martinez appeals from a sentencing order of the Washington County Circuit Court reflecting convictions for capital murder, unlawful discharge of a firearm from a vehicle, and terroristic act, as well as a sentence enhancement for employing a firearm in the commission of a felony. He makes the following arguments on appeal: (1) the trial court erred in allowing hearsay testimony and failing to give a limiting instruction to the jury; (2) the trial court erred by denying his motions for directed verdict on the charges of capital murder and terroristic act, Class B felony; (3) the trial court imposed an illegal sentence because he was not found guilty on the firearm enhancement; and (4) comments by the trial court to the jury during the instructions on the terroristic-act charges prejudiced him. We affirm.
Appellant was charged and tried in connection with the death of Jimmy Rodriguez. The State produced evidence at trial that Rodriguez had been standing in front of his aunt and uncle's home, conversing with a group of people when a blue car drove past. The car returned and pulled up in front of the house. The driver, Giovanni Vasquez, asked a *335 question of the group; then a passenger, identified as appellant, fired several shots at the group. One of the bullets struck Rodriguez, killing him. Bullet holes were discovered in the residence as well as the residence next door. Appellant moved for directed verdicts, and the motions were denied. Appellant was convicted and sentenced as follows: life imprisonment on the count of capital murder; 480 months' imprisonment on the count of unlawful discharge of a firearm, Class Y felony; 60 months' imprisonment on the charge of unlawful discharge of a firearm, Class B felony; 480 months' imprisonment on the count of terroristic act, Class Y felony; 60 months' imprisonment on the two counts of terroristic act, Class B felony; and 84 months' imprisonment for the firearm enhancement.[1] This appeal followed.
Directed-Verdict Motions
In his second and third points on appeal, appellant argues that the trial court erred by denying his motions for directed verdict. A motion for directed verdict is a challenge to the sufficiency of the evidence. Pratt v. State , 359 Ark. 16, 194 S.W.3d 183 (2004). Double jeopardy considerations require us to consider a challenge to the sufficiency of the evidence before other points are raised. Id. This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. Navarro v. State , 371 Ark. 179, 264 S.W.3d 530 (2007). We affirm a conviction if substantial evidence exists to support it. Id. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Id.
Appellant contends that the trial court erred by denying his motion for directed verdict on the charge of capital murder. A person commits capital murder if, with the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person. Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2017). As recounted above, the State produced the testimony of Eric Rodriguez, one of the men who was standing in front of the house, that appellant fired a gun at the group of men, killing Jimmy Rodriguez. The State also produced testimony from Viviana Romero that appellant told her he had shot Rodriguez. She further testified that appellant had a gun when he came to her house shortly after the shooting, that appellant told her he urinated on his hands in her bathroom to "destroy gun evidence," and that she and her brother first hid the gun appellant had in their attic, then buried it outside.
Appellant contends that the evidence is insufficient because Romero was not a credible witness, a man named Jose Delatorre confessed to the shooting and testified during the trial that he shot Jimmy *336 Rodriguez, and the State's firearms expert was unable to link the bullet recovered from Jimmy Rodriguez's body to the alleged murder weapon. It is the sole province of the jury to determine a witness's credibility, as well as the weight and value to be given to the testimony. See Simpson v. State , 355 Ark. 294, 138 S.W.3d 671 (2003). Thus, the jury was free to believe the testimony of Viviana Romero and Eric Rodriguez and disbelieve the confession by Jose Delatorre. Further, there is nothing in our capital-murder statute that requires the State to prove anything regarding the weapon alleged to have been used. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the conviction for capital murder.
Appellant also contends that the trial court erred by denying his motion for directed verdict as to the two counts of terroristic act, Class B felony,[2] because Romero contradicted herself and had motive to lie, police were unable to link the bullets recovered from the residences to the alleged murder weapon, and there was no proof that the bullets recovered were fired during the incident. A person commits terroristic act, Class B felony, if the person shoots at an occupiable structure with the purpose to cause injury to a person or damage to property. Ark. Code Ann. § 5-13-302(a)(2) (Repl. 2013).
The State produced testimony that appellant fired several rounds toward a group of people standing in front of a residence. The State is correct in its assertion that it was only required to prove that appellant shot at an occupiable structure with the intent to cause harm to a person or property, and that it was not required to prove that actual injury or damage occurred. The evidence adduced at trial was sufficient for the jury to conclude that appellant shot at an occupiable structure (the Rodriguez home) in an attempt to cause injury to the people standing in front of it. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the conviction on two counts of terroristic act, Class B felony. We hold that the trial court did not err by denying appellant's motions for directed verdict on the charges of capital murder and terroristic act, Class B felony.
Testimony of Detective Hendrix
At trial, Detective Michael Hendrix testified after Eric Rodriguez. Appellant objected when Det. Hendrix was asked about information Rodriguez gave him during an interview following the shooting, arguing that Det. Hendrix's responses would be inadmissible hearsay. The State responded that the statements were not hearsay because they were not being offered to prove the truth of the matter asserted, but rather to explain Det. Hendrix's course of action. Appellant also argued that the testimony of Det. Hendrix would prejudice him by bolstering Eric Rodriguez's earlier testimony. In response to the objection, the trial court offered to give a limiting instruction concerning the purpose of Det. Hendrix's testimony. Appellant agreed to the trial court's offer and Det. Hendrix was permitted to testify regarding Eric Rodriguez's responses to his questioning. The trial court never gave the limiting instruction.
On appeal, appellant argues that the trial court erred by permitting the hearsay testimony of Det. Hendrix and failing to give the limiting instruction. The *337 State contends that any error in admitting Det. Hendrix's testimony was rendered harmless by appellant's failure to object to substantially similar testimony of a later witness. Det. Hendrix testified that Eric Rodriguez told him that a blue car driven by Giovanni Vasquez stopped in front of the house, then "words were exchanged, and shots were fired." Rodriguez also said that he recognized the shooter but did not know his name. Later, Benaiah Townsend with the Springdale Police Department testified without objection that Eric Rodriguez stated during an interview that the car was a blue Ford Focus driven by Giovanni Vasquez and that Rodriguez had seen the shooter before but did not know his name. This court will not reverse an evidentiary ruling absent a showing of prejudice. Sauerwin v. State , 363 Ark. 324, 214 S.W.3d 266 (2005). Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial. Gonzales v. State , 306 Ark. 1, 811 S.W.2d 760 (1991). Appellant cannot demonstrate prejudice from the trial court's ruling, and we affirm on this point.
Firearm Enhancement
Appellant's next argument is that the trial court illegally enhanced the sentence on his conviction for capital murder because the jury did not find him guilty beyond a reasonable doubt of using a firearm in the commission of a felony. The State contends that the argument is not preserved because appellant failed to object to the imposition of the enhanced sentence before the trial court. However, appellant contends on appeal that the trial court imposed an illegal sentence, and an appellant may raise the issue of an illegal sentence without having objected to it at trial. Bilderback v. State , 319 Ark. 643, 893 S.W.2d 780 (1995).[3]
Arkansas Code Annotated section 16-90-120(a) (Repl. 2016) provides that any person who uses a firearm in the commission of a felony may be subjected to an additional period of confinement not to exceed fifteen years. The felony information alleged that appellant used a firearm in the commission of the offense of capital murder. The jury was given an instruction on section 16-90-120(a). Verdict form 1(D), which required the jury to make a finding as to whether appellant utilized a firearm in the commission of a felony, was given to the jury and the jury was instructed to complete it. Verdict form 1(D) was not completed by the jury, nor did the jury render a specific verdict on the enhancement in open court. At sentencing, the jury enhanced appellant's sentence for capital murder by seven years, pursuant to section 16-90-120.
Appellant contends that the jury's failure to make a finding renders the seven-year enhancement illegal. The State responds that a specific finding by the jury regarding the firearm enhancement is unnecessary because the jury found appellant guilty of unlawful discharge of a firearm, which necessarily includes a determination that he utilized a firearm. In support of his argument, appellant cites Johnson v. State , 249 Ark. 208, 458 S.W.2d 409 (1970). In that case, this court held that a trial court was without authority to impose a firearm enhancement because the information had not alleged a violation of the enhancement statute and there had been no finding by *338 the jury that the defendant had utilized a firearm. However, in Johnson , the defendant's sole conviction was for burglary, and this court pointed out in its opinion that the manner of the force or mode of intimidation is not material to a finding of guilt for robbery.
Here, in contrast, the information alleged that appellant used a firearm in the commission of a felony, and the jury found appellant guilty beyond a reasonable doubt of unlawful discharge of a firearm, Class Y felony. A person commits unlawful discharge of a firearm, Class Y felony, when he or she knowingly discharges a firearm from a vehicle and by the discharge of the firearm causes death or serious physical injury to another person. Ark. Code Ann. § 5-74-107(a)(1) (Supp. 2017). By convicting appellant on this charge, the jury found that he shot a firearm from a vehicle and killed Jimmy Rodriguez. The death of Jimmy Rodriguez resulted in appellant being charged with and convicted of capital murder. Under the facts presented, the convictions for capital murder and unlawful discharge of a firearm, Class Y felony, required the jury to find beyond a reasonable doubt that appellant used a firearm in the commission of the capital murder. As the enhancement is not a substantive offense, but rather a sentence enhancement, Williams v. State , 364 Ark. 203, 217 S.W.3d 817 (2005), the findings of guilt made by the jury were sufficient to trigger the application of section 16-90-120. Accordingly, the enhancement of appellant's sentence for capital murder was not illegal. We affirm on this point.
Comments During Jury Instructions
Finally, appellant contends that he was prejudiced by certain comments made to the jury by the trial court during the guilt-phase instructions. Appellant failed to object to the comment made by the trial court below. Therefore, we decline to consider appellant's claim on appeal. See Remeta v. State , 300 Ark. 92, 777 S.W.2d 833 (1989) (declining to consider a claim that the trial court had improperly commented on the evidence because the issue was not raised below).
Rule 4-3(i) Review
Pursuant to Arkansas Supreme Court Rule 4-3(i) (2018), the record was reviewed for prejudicial error and none was found.
Affirmed.
Hart, J., concurs in part and dissents in part.
Josephine Linker Hart, Justice, concurring in part and dissenting in part.
I agree that the evidence was sufficient to convict Martinez of capital murder. I write separately to address Martinez's sentence of 480 months for the single count of terroristic act, Class Y felony. This sentence violates double jeopardy and should be dismissed.
Double jeopardy, which prohibits multiple punishments for the same offense, has long been a fundamental principle in American criminal law. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Brown v. Ohio , 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), quoting Blockburger v. United States , 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). With regard to overlapping punishments, Ark. Code Ann. § 5-1-110 provides in relevant part as follows:
(a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant *339 may be prosecuted for each such offense. However, the defendant may not be convicted of more than one (1) offense if:
...
(3) Inconsistent findings of fact are required to establish the commission of the offenses(.)
Ark. Code Ann. § 5-1-110(a)(3) (emphasis added). Furthermore, it is well settled that an "illegal" sentence may be corrected at any time, even on direct appeal. Donaldson v. State , 370 Ark. 3, 257 S.W.3d 74 (2007). "Specifically, this court views an issue of a void or illegal sentence as being an issue of subject-matter jurisdiction[.]" Id. See also Ark. Sup. Ct. R. 4-3(i) ("When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant[.]").
Appellant was convicted of one count of capital murder, a Class Y felony. A person commits capital murder if, "with the premeditated and deliberated purpose of causing the death of another person , the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2017) (emphasis added). Appellant was also convicted of three counts of terroristic act, one of the Class Y felony variety, and two of the Class B felony variety. The terroristic act statute provides as follows:
(a) A person commits a terroristic act if, while not in the commission of a lawful act, the person:
(1) Shoots at or in any manner projects an object at a conveyance which is being operated or which is occupied by another person with the purpose to cause injury to another person or damage to property; or
(2) Shoots at an occupiable structure with the purpose to cause injury to a person or damage to property.
(b)
(1) Upon conviction, any person who commits a terroristic act is guilty of a Class B felony.
(2) Upon conviction, any person who commits a terroristic act is guilty of a Class Y felony if the person with the purpose of causing physical injury to another person causes serious physical injury or death to any person.
Ark. Code Ann. § 5-13-310(a) - (b) (emphasis added). Based upon the evidence presented at trial and the proof required for each respective conviction, the single Class Y terroristic act conviction necessarily corresponds to the bullet that struck and killed the victim, who was standing with a group of individuals standing at the street curb. The two Class B terroristic act convictions correspond to the bullet fragments found at 609 Savage and 611 Savage, residential homes situated somewhere on the other side of the where the group was standing at the street curb.
Accordingly, Appellant's conviction for Class Y terroristic act violates Ark. Code Ann. § 5-1-110(a)(3) because "inconsistent findings of fact are required" to support both this conviction and the capital murder conviction. To establish a basis for the capital murder conviction, the prosecution had to prove that Appellant fired the shot that struck the victim with "the premeditated and deliberated purpose of causing the death of another person" ( Ark. Code Ann. § 5-10-101(a)(4) ), and indeed the prosecution's theory at trial was that this shooting death was a planned retaliation for other gang-related activity. Consistent with the prosecution's theory, Appellant traveled to the crime scene on the day in question to kill an individual who was standing together with a small group of people outside on the street curb (although the evidence suggests that Appellant *340 may have intended to kill someone else in the group who was standing next to the actual victim)-not to shoot at some houses situated back away from the street. No evidence was presented to suggest that Appellant had reason to be shooting at anything other than the group of individuals standing outside on the street. Even so, it may be that the two "missed" shots can support the two Class B terroristic act convictions because each shot involved an additional pull of the trigger. See McLennan v. State , 337 Ark. 83, 89-90, 987 S.W.2d 668, 672 (1999) ("Each of appellant's shots required a separate conscious act or impulse in pulling the trigger and is accordingly punishable as a separate offense."). However, this rationale cannot be extended to Appellant's Class Y terroristic act conviction, the basis of which is necessarily the shot that struck and killed the victim, which is the same shot forming the basis of the capital murder conviction.
The required findings for the capital murder conviction (that Appellant fired the shot that killed the victim, who was standing outside with a small group on the street curb, with "the premeditated and deliberated purpose of causing the death of another person") are incompatible with the findings required for the Class Y terroristic act conviction (that Appellant fired the shot that killed the victim "at an occupiable structure"). This distinction is of significant importance. If a suspect purposely shoots at a group of individuals standing outside on a street curb, and the fired shot actually strikes and kills one of those individuals, then the facts would be consistent with the "premediated and deliberate purpose" requirement for capital murder. If, however, the suspect was actually "(shooting) at an occupiable structure" when he fired the shot that killed the victim, and the bullet simply struck the victim while traveling in the direction of the targeted occupiable structure, then the facts would be inconsistent with the "premediated and deliberate purpose" requirement for capital murder.[4] In short, it could be one (capital murder) or the other (Class Y terroristic act), but it could not be both, at least with regard to the shot that struck and killed the victim. Accordingly, I would reverse and dismiss the conviction for terroristic act, Class Y felony.
Concurring in part; dissenting in part.

The amended sentencing order contains what appears to be a scrivener's error. Despite the jury-verdict form from the sentencing phase of the trial stating that appellant's conviction for capital murder was enhanced pursuant to Arkansas Code Annotated section 16-90-120, and the court's imposition of the enhancement during formal sentencing, the amended sentencing order reflects that appellant's sentence was enhanced by 0 months. There is no indication in the record that this is anything other than a scrivener's error. When there is a discrepancy between the sentencing order and the pronouncement of sentence, it is the sentencing order that controls. See Vance v. State , 2011 Ark. 243, at 35, 383 S.W.3d 325, 347. However, clerical errors do not prevent enforcement of a judgment, and a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order. Id.

Terroristic act is a Class Y felony if a person who commits a terroristic act causes physical injury or death to another person with the purpose to cause physical injury to another person. Ark. Code Ann. § 5-13-302(b)(2) (Repl. 2013). Appellant does not challenge his conviction for terroristic act, Class Y felony, on appeal.

In support of its argument, the State cites Haynie v. State , 257 Ark. 542, 518 S.W.2d 492 (1975), in which this court declined to consider the argument that the jury, not the trial court, should have determined the sentence on a firearm enhancement because no objection was made below. Unlike here, the appellant in Haynie did not contend that the sentence was illegal.

While the latter fact pattern may or may not support a conviction for Class Y terroristic act if it can be shown that the shooter's purpose was to "(cause) physical injury" (Ark. Code Ann. § 5-13-310(b)(2) ), the distinction is still significant because of the disparity in the statutorily prescribed sentencing possibilities for these two offenses, which illustrates the legislature's intent to treat these situations differently. Ark. Code Ann. § 5-10-101(c)(1) provides that capital murder is punishable by death or life imprisonment without the possibility of parole. Ark. Code Ann. § 5-4-401(a)(1) provides that a conviction for a Class Y felony is punishable by a sentence of "not less than ten (10) years and not more than forty (40) years, or life[.]"