N. MARK KLAPPENBACH, Judge
Appellant Dontae K. Washington appeals his conviction for being a felon in possession of a firearm, following a jury trial in Jefferson County Circuit Court. Dontae argues on appeal that the circuit court erred by permitting the State to present the jury with the audio and transcript of a sworn, recorded pretrial statement given by Christina Bradley to law enforcement. Dontae asserts that her prior statement constituted inadmissible hearsay that did not fit within the exception found in Arkansas Rule of Evidence 801(d)(1). We affirm.
Before our analysis begins, we outline the precise legal concepts at issue on appeal. As a general rule, hearsay is not admissible evidence. See Ark. R. Evid. 802. There are, however, certain out-of-court statements that are not considered hearsay, and one such exception is outlined in Rule 801(d)(1) :
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and, if offered in a criminal proceeding, was given under oath and *628 subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]
A circuit court's evidentiary rulings are reviewed on appeal under an abuse-of-discretion standard. Tarver v. State , 2018 Ark. 202, 547 S.W.3d 689. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Jefferson v. State , 2017 Ark. App. 536, 532 S.W.3d 593. Additionally, unless an appellant can demonstrate prejudice from an evidentiary ruling, the appellate court will not reverse, as prejudice is not presumed. Taffner v. State , 2018 Ark. 99, 541 S.W.3d 430.
At trial, the State sought to prove that Dontae, who admittedly had a prior felony, possessed a rifle that was found on the night of February 20, 2017, in Christina Bradley's apartment under the living-room couch. Christina and Dontae were in an intermittent romantic relationship for several years, and by February 2017 they had two small children together. A week before to the April 2018 jury trial, Christina and Dontae married.
The evidence showed that on the night in question, Dontae was near the Camelot Apartments in Pine Bluff, where Christina lived, when multiple shots were fired. Dontae was struck by gunfire in the face and eye, was bleeding, went to Christina's apartment (# 3030), and banged on the door seeking help. They went to the local hospital's emergency room so that he could receive medical care. Police officers located Christina in the waiting room and asked her what had happened, and as a result, Christina went back to the apartment complex with the police. In processing the crime scene, officers found multiple spent rounds outside in the street and surrounding area; Dontae's car window was shattered, and there was blood inside Dontae's car and on Christina's apartment door. When asked, Christina gave consent for the police to come inside her apartment to take photographs and search. The police found a loaded Saiga 7.62 rifle under the couch in the living room. The rifle was loaded with a magazine holding twenty-eight cartridges. In a kitchen cabinet, the police found a backpack that contained additional ammunition compatible with the rifle and other items associated with drug dealing.
Christina was called to testify by the State. She acknowledged in her testimony that she had previously given a sworn statement to the police the day after the shooting in which she said that she let Dontae inside her apartment that night, that he had that firearm with him, and that he put it on or under the couch. Christina recalled telling the police that Dontae stayed at the apartment on a routine and regular basis and that everything the police found in the search of her apartment belonged to Dontae. Christina testified, however, that the truth was that she did not know whose rifle it was, a different man (Darius Williamson) had been living with her then, and Dontae did not have the rifle with him or come inside her apartment that night.[1] Christina recalled hearing *629 the gunfire and Dontae coming to her door for help, but she maintained that she took him directly to the hospital. She admitted that she never mentioned Darius Williamson when she gave her statement to the police. She stated that she did not know anything about the weapon until police found it and that when she made up the prior statement to police, she had been pressured by them to say that Dontae had brought the rifle into her apartment. She acknowledged that she was on probation at that time for filing a false police report and understood that she could get in trouble for lying. Christina nonetheless testified that when she initially talked to the police officers, "like four detectives" repeatedly yelled at her and threatened her that if she did not say the gun was Dontae's, they would take her children away or have social services take her children. She admitted that she had never raised the issue of having been coerced until the trial.
The State asked to play the audio version of Christina's prior sworn statement to rebut Christina's claim that the police had improperly influenced her in making the statement, making direct reference to the terminology of Arkansas Rule of Evidence 801(d)(1). Defense counsel argued that Christina had already testified to the pretrial statement's contents, that there was no reason to play the audio, and that the State's reliance on Rule 801(d)(1) was incorrect. The State responded that the jury was entitled to hear Christina's demeanor and precise statements on the audio recording to undercut the validity of her changed testimony. The circuit court ruled that it would permit the State to play the audio recording.
On the recording, Christina was placed under oath by the deputy prosecutor, and a detective asked her to tell them what happened at her apartment. Christina's statement included that (1) she heard shots being fired; (2) Dontae knocked on her door; (3) Dontae had been shot in the face, was bloody, and told her that he had been shot by someone who was following him in a black BMW; (4) Dontae had a large black gun with him and put it on the couch; (5) he had her take him to the hospital; (6) she consented for officers to enter, photograph, and search her apartment; and (7) all the items taken from the apartment that night were Dontae's. At the end of the statement, Christina confirmed that she knew she was under oath, that what she had said was the truth, and that there was nothing she wanted to change about her statement.
On cross-examination by defense counsel, Christina restated that she was pressured by the police to say Dontae had the firearm and that, in truth, Dontae did not have it or put it under her couch.
The next witness was the detective who participated in acquiring Christina's pretrial statement. The detective stated that he had listened to Christina's interview, compared it to the transcript, and believed the transcript to be accurate. The deputy prosecutor told the circuit court that the audio of Christina's statement that had been played the day before was very difficult to hear and understand, so he wanted to replay the audio and distribute the transcript of it to the jury. Defense counsel remarked that the jury had already heard the audio and that it would be redundant. The circuit court stated that it had already ruled the statement admissible, that the court could not understand the audio as played, and that the State would be permitted to replay it and provide transcripts to the jury.
The detective testified that Christina had said that Dontae had a large gun with him when he was knocking on her door, *630 told her that he had been shot, came into the apartment, and then placed the gun under the couch. The detective denied ever threatening Christina or making any threats specifically about her children to get the pretrial statement.
The State also played an audio of Dontae's pretrial statement to the police in which he said that some guys in a black BMW shot at him, he was hit, he ran to Christina's apartment seeking her help, and she took him to the hospital. Dontae acknowledged that he was on parole; he flatly denied having possessed a firearm.
Following his conviction and sentence to eight years of imprisonment, Dontae appealed. He argues that the circuit court's evidentiary ruling was erroneous and requires reversal. Dontae argues that the State was impermissibly allowed to present the jury with Christina's sworn statement by audio and that the circuit court compounded the error by permitting a repeat of the audio with transcripts. This, he asserts, prejudiced him by allowing the State to unfairly bolster its case. The thrust of Dontae's argument is that the circuit court erred by considering the pretrial statement as "rebuttal" to her claim of being pressured into saying Dontae had the firearm, referring to Rule 801(d)(1)(ii). The State asserts that Dontae's argument is not preserved for appellate review and, in the alternative, he fails to demonstrate error or prejudice. We hold that Dontae has failed to demonstrate reversible error.
We first reject the State's contention that Dontae failed to preserve his argument for appellate review. The State clearly requested that the circuit court permit it to admit this evidence under Rule 801(d)(1), and defense counsel argued in response that this particular rule was inapplicable. The circuit court ruled on the question of whether Christina's pretrial statement constituted inadmissible hearsay unfavorably to Dontae, and this suffices to preserve the argument for appellate review.
Even assuming, without deciding, that the audio and transcript of the statement was impermissible hearsay, we affirm because the admission of this evidence was merely cumulative to Christina's testimony presented to the jury without objection. Defense counsel conceded as much when he argued to the circuit court that Christina had "already gone through the statement and told you she said everything on that statement." In his reply brief, Dontae asserts that he "agrees that the evidence in question was repetitious, and therefore cumulative, but disagrees that he cannot show prejudice." Dontae asserts that prejudice arose because the State was allowed to emphasize inadmissible evidence.
We are not persuaded. Christina was examined by the State extensively about the contents of the sworn pretrial statement, and she confirmed its contents before presentation of the audio or the transcript to the jury. During cross-examination by defense counsel, Christina reconfirmed that she had told the police that Dontae had the firearm that night. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403. The mere fact that evidence is cumulative may be a ground for its exclusion in the sound discretion of the circuit court, but it is hardly a basis for holding that its admission, otherwise proper, constitutes an abuse of discretion. See Felty v. State , 306 Ark. 634, 816 S.W.2d 872 (1991) ; Beed v. State , 271 Ark. 526, 609 S.W.2d 898 (1980) ;
*631 Turner v. State , 2014 Ark. App. 428, 439 S.W.3d 88. "Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial." Martinez v. State , 2019 Ark. 85, at 3, 569 S.W.3d 333, 337 ; see also Hensley v. State , 2018 Ark. App. 513, 560 S.W.3d 834 (circuit court erred in deeming evidence to fit within a hearsay exception, but admission of evidence was cumulative and thus nonprejudicial). We hasten to add that legitimate concerns were raised about whether the jurors could hear and understand the first playing of the audio, undercutting Dontae's contention that the State was permitted to unfairly emphasize the recorded statement. For the foregoing reasons, we affirm.
Affirmed.
Gruber, C.J., and Murphy, J., agree.

Christina was ultimately deemed a hostile witness to the State, and the circuit court permitted the State to question her accordingly. The credibility of a witness may be attacked by any party, including the party calling the witness. Ark. R. Evid. 607. One method of impeachment of a witness is the use of prior statements inconsistent with testimony at trial. Ark. R. Evid 613. Considerable discretion is given to the circuit court when determining where the line is drawn in the impeachment of a hostile witness, and those rulings will not be reversed absent an abuse of discretion. Kennedy v. State , 344 Ark. 433, 42 S.W.3d 407 (2001).